Phillip Paul Weidner
Lisa Rosano
PHILLIP PAUL WEIDNER & ASSOCIATES, APC.
943 W. 6th Avenue, Suite 300
Anchorage, AK 99501
(907) 276-1200
(907) 278-6571 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| The ESTATE OF LAUREL HUNTER, by and through her husband and Personal Representative of Estate, NEIL HUNTER; NEIL HUNTER,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICER MILLS; CAROLINE BAPI; AND JOHN DOES 1-10, EMPLOYEES AND/OR AGENTS OF THE STATE OF ALASKA, DEPARTMENT OF CORRECTIONS.<br><br>Defendants. | Case No. 3:18-cv-00151-SLG |

## AMENDED COMPLAINT

COMES NOW Plaintiff, ESTATE OF LAUREL HUNTER, by and through the Personal Representative NEIL HUNTER, by and through counsel Phillip Paul Weidner & Associates, APC, and hereby states, claims, pleads and alleges as its causes of action in the instant matter, as follows.

### NATURE OF ACTION

1. This action seeks relief for violations of decedent Laurel Hunter's rights under the U.S. Constitution and statutes, including the 4th Amendment, 5th Amendment, 8th and the 14th Amendments to the U.S. Constitution, 42 U.S.C. §1983, the United States of America Common Law, and for injuries and damages to her Estate.

2. The culpable acts of the Defendants directly resulted in physical and emotional and economic injury, loss of liberty, and injuries to Laurel Hunter, including her constitutional, statutory, and common law rights.

3. This action seeks relief arising under 42 U.S.C. §1983 against the individual Defendants, Officer Mills, Caroline Bapi and John/Jane Does 1-10, who are employees and/or agents of the State of Alaska Department of Corrections. Suit is brought against them in their individual capacities.

## JURISDICTION AND VENUE

4. Jurisdiction is invoked under 42 U.S.C. §1983.

5. Venue is proper in this judicial district upon 28 U.S.C. §1391(b)(2) as the acts complained of occurred in the Third Judicial District.

## PARTIES

6. Decedent LAUREL HUNTER was arrested and taken into the custody of Anchorage Correctional Center on July 4, 2016. She died on or about July 6, 2016. She suffered from health condition(s) and required medical attention. Upon information and belief, Defendants, who are Anchorage Correctional Center employees and/or agents, under the color of state law within the meaning of 42 U.S.C. §1983, denied decedent appropriate medical care and medication in violation of her U.S. Constitutional rights. The failure to do so resulted in her death.

7. Plaintiff ESTATE OF LAUREL HUNTER, by and through the Personal Representative NEIL HUNTER, is the legal Estate of the deceased, Laurel Hunter under the law of Alaska, and has suffered damages, and said Estate and/or said Personal Representative Neil Hunter, are entitled to recovery of all appropriate relief from the Defendants as to same.

8. OFFICER MILLS was, at all times relevant hereto, an agent and/or employee of the State of Alaska and/or the Alaska Department of Corrections and/or its Division of Institutions and/or Anchorage Correctional Center. Officer Mills' culpable conduct was done while he was acting under the color of law.

9. CAROLINE BAPI was, at all time relevant hereto, an agent and/or employee of the State of Alaska and/or the Alaska Department of Corrections and/or its Division of Institutions and/or Anchorage Correctional Center. The culpable acts of Caroline Bapi were done while she was acting under the color of law.

10. JOHN/JANE DOES 1-10 were, at all times relevant hereto, agents and/or employees of the State of Alaska and/or the Alaska Department of Corrections and/or its Division of Institutions and/or Anchorage Correctional Center. The culpable conduct of John/Jane Does 1-10 was done while they were acting under the color of law.

11. Defendants Officer Mills, Caroline Bapi, and John/Jane Does 1-10 are collectively referred to as "Defendants."

## FACTS COMMON TO ALL COUNTS

12. On July 4, 2016, Laurel Hunter was arrested by Anchorage Police Department Officer(s) and taken to the Anchorage Correctional Center. She had been stopped by Anchorage Police for suspicion of operating a vehicle under the influence. Before she was transported to the Correctional Center, she was treated by medics. She was then transported to Anchorage Correctional Center. Further upon information and belief, Laurel Hunter informed Anchorage Correctional Center staff that she suffered from acute medical condition(s), including diabetes.

13. Pursuant to prison policies, upon initial admission to the Anchorage Correctional Center, Laurel Hunter was to have been evaluated for the purpose of determining her medical needs. Staff are required to inspect inmates for "obvious injuries or illnesses," and inquire "about any medical problems or recent use of medication or unprescribed drugs. A person who appears to be ill, injured, or incapacitated by alcohol, narcotics, or similar agents, but not in immediate need of medical attention, must be given medical attention as soon as practical. A written record must be kept of the initial admission health inspection." 22 AAC 05.005. The Criminal Booking Screen appears to have been conducted at approximately 2256 hours on July 4, 2016.

14. On or about July 4, 2016, Stephanie Gaiser spoke with Laurel Hunter by phone and learned that Laurel Hunter was not receiving her prescription medication(s). She asked Laurel Hunter to go to the medical unit.

15. Upon information and belief, on July 5, 2016, at approximately 1:36 p.m., Laurel Hunter apparently put in a Request for Medical Care complaining of "withdrawals from my medicine" and asking to "please be put on detox protocol."

16. On or about July 5, 2016, sometime in the evening (before 8:00 p.m., approximately 6:30 p.m.), Stephanie Gaiser visited Laurel Hunter at Anchorage Correctional Center and learned that Laurel Hunter was still not receiving her prescription medication(s). Laurel Hunter informed Stephanie that she had been in and out of the medical unit and told, in effect, that she had been in there too much. Stephanie observed that Laurel Hunter was very ill and suffering extraordinary pain and physical distress. Laurel Hunter told Stephanie that she felt miserable. She was shaking, and she vomited multiple times during the visit. Stephanie spoke with Officer Mills, a male, and informed him of Laurel Hunter's

very serious condition, the necessity of Ms. Hunter receiving her prescription medication(s), Laurel Hunter's physical appearance (including shaking, vomiting, and other indicia of medical emergency), Laurel Hunter's high blood pressure, and the dangers of Laurel Hunter experiencing prescription drug withdrawal. Stephanie Gaiser implored him to immediately address Laurel Hunter's very serious condition. Officer Mills knew and/or should have known that he had a legal obligation to act immediately on such notification, including but not limited to, notifying other medical staff members to initiate first-aid, and/or contacting an on-call health care practitioner and/or contacting an emergency medical services to arrange for appropriate transport of Laurel Hunter to a hospital. Officer Mills told Ms. Gaiser words to the effect that the Anchorage Correctional Center takes inmate health issues seriously, and that they did not want inmates to die in the facility. He told her that he would be supervising the medical unit later that evening and that Laurel Hunter would receive care, including 24-hour supervision. Ms. Gaiser left the facility concerned about her mother's health and well-being and anxious as whether her mother would receive the care she desperately needed. Ms. Gaiser feared that her mother would die.

17. Upon information and belief, Officer Mills exhibited deliberate indifference to the health and well-being of Laurel Hunter by disregarding information that she was very ill and needed immediate medical attention and refusing to take immediate action to investigate and report Ms. Gaiser's concerns to other medical staff and/or health care providers and/or supervisors, and assist Laurel Hunter as required by prison policies and procedures, and the U.S. Constitution. He deprived Laurel Hunter of her rights under the 4th, 5th, 8th and 14th Amendments of the U.S. Constitution. Given the obvious physical distress Laurel

Hunter was suffering, she should have received medical attention promptly. Officer Mills' refusal to promptly investigate and report Laurel Hunter's medical condition resulted in Laurel Hunter suffering further physical deterioration and ultimately death.

18. Upon information and belief, Laurel Hunter was put on a detox protocol at approximately 10:10 p.m. on July 5, 2016.

19. DOC Policy No. 807.02 (VI)(B) provides that "Health care staff, other than a physician, dentist, psychiatrist, psychologist, optometrist, osteopath, podiatrist, physician assistant, or advanced nurse practitioner, shall perform health care treatment per written orders of licensed practitioners or per nursing protocols as approved by the Health Care Administrator and Medical Director of Inmate Health."

20. DOC Policy NO. 807.01 (III)(B) provides that "All clinical decisions regarding health care shall be made by a qualified licensed medical provider and not be countermanded by non-clinicians. All health care professionals shall have appropriate credentials and provide services consistent with the licensure, certification and registration requirements of the State of Alaska."

21. Upon information and belief, unknown person(s) directed that Laurel Hunter be transferred from the medical unit to the booking unit. Further upon information and belief, corrections officers at the booking unit lacked medical training and were not informed of Laurel Hunter's medical condition and/or needs upon receiving her in their care. Upon information and belief, Laurel Hunter was transferred for the purpose of staging her transfer to Hiland Mountain Correctional Center.

22. Upon information and belief, Nurse Caroline Bapi became the nurse treating and monitoring Laurel Hunter when Hunter was transferred to booking. Nurse Bapi exhibited

deliberate indifference to the health and well-being of Laurel Hunter by observing that Laurel Hunter was in physical distress and noting that she was continuing to vomit after she had been placed on the detox protocol. In response to Laurel Hunter's obvious distress and worsening medical condition, she took no action other than to advise that Laurel Hunter drink water. Upon information and belief, although Nurse Bapi knew that Laurel Hunter was on a detox protocol, she did not follow the Drug Withdrawal Order Set and Medication Dispensing Chart, which requires that a "facility provider or on-call provider" be notified if an inmate experiences "nausea or vomiting despite treatment." Further upon information and belief, although Laurel Hunter informed Nurse Bapi of stomach pain, Nurse Bapi did take responsive action or seek input from the "facility provider or on-call provider."

23. Upon information and belief, an on-duty officer called to Nurse Bapi while he was doing a check on Laurel Hunter and asked for Nurse Bapi to assist. Laurel Hunter had apparently reported continued stomach pain. Upon information and belief, Nurse Bapi dismissed the complaints of pain and directed that Laurel Hunter drink more water.

24. Upon information and belief, Nurse Bapi did not monitor Laurel Hunter in accordance with her duties and obligations as to Laurel Hunter's deteriorating condition.

25. That is, upon information and belief, Ms. Hunter continued to vomit numerous times while she was a patient of Nurse Bapi, and her condition worsened. She began to squeeze her legs together in rapid fashion numerous times and continued to vomit. At approximately 11:52 p.m. a corrections officer opened the door and talked with Laurel Hunter, but nothing was done to address her medical needs. Laurel Hunter began to roll back and forth and vomit. Another corrections officer came into her cell at 1:25 a.m. and gave Laurel Hunter fresh clothes. Laurel Hunter could not change her clothes because she had to vomit. Her

bouts of vomiting increased in frequency and she started to convulse. This continued until about 2:17 a.m. At that point, she stopped moving. At about 2:33 a.m. a corrections officer finally checked on Ms. Hunter through a window. The Anchorage Fire Department was called on scene and arrived at 2:41 a.m. Ms. Hunter was pronounced dead at 3:10 a.m.

26. John/Jane Does 1-10 exhibited deliberate indifference to the health and well-being of Laurel Hunter. Upon information and belief, during the time Laurel Hunter was at the Anchorage Correctional Center, she did not receive her necessary medications, nor did she receive appropriate medical care or supervision although, upon information and belief, Laurel Hunter reported her medical condition(s) to prison officials repeatedly. She was finally evaluated by prison official(s) and/or medical staff after suffering for an extensive period of time. She was moved from a medical unit to a booking unit for the purpose of staging her transfer to another institution even though she would not have the medical care she needed at the booking unit. She was moved to a booking unit where she would be monitored by corrections officers who lacked the proper medical training and were not informed of Laurel Hunter's medical condition.

27. The failure and/or refusal of John/Jane Does 1-10 to assist Laurel Hunter under the circumstances, and as required by prison policies and procedures, and the U.S. Constitution, evidenced a deliberate indifference to the serious medical needs of Laurel Hunter and led to her substantial pain and suffering and tragic death, and deprived her of her rights under the 4th, 5th, 8th and 14th Amendments of the U.S. Constitution.

28. In the early morning hours of July 6, 2016, Laurel Hunter died. She was transported to Alaska Regional Hospital. The Death Certificate states that she died at Alaska Regional Hospital.

Amended Complaint 8
*Estate of Laurel Hunter v. Officer Mills et al.*

Case 3:18-cv-00151-SLG   Document 12   Filed 10/17/18   Page 8 of 10

## COUNT I

### 42 U.S.C. § 1983 against Defendants

29. The Plaintiff realleges and incorporates all preceding paragraphs of this Complaint and further alleges and complains as follows.

30. The Eighth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment's Due Process Clause, forbids infliction of cruel and unusual punishment and imposes a duty on prison officials to provide adequate medical care to those it confines.

31. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction, and constitutes violations of the 4th, 5th, 8th and 14th Amendments of the United States Constitution.

32. The Defendants' actions or omissions evidenced deliberate indifference to Laurel Hunter's serious medical needs, and led to her tragic death. Such conduct violated Laurel Hunter's rights under the Eighth Amendment to the United States Constitution.

33. Officer Mills had clear knowledge and information that Laurel Hunter was suffering a medical crisis. His actions and/or omissions upon becoming aware of her serious medical condition resulted in Laurel Hunter continuing to suffer, her condition worsening, and her tragic death.

34. Nurse Caroline Bapi had clear knowledge and information that Laurel Hunter needed monitoring as to the detox protocol and her serious medical condition. Further upon information and belief, she had duties and obligations to report to "facility" or "on-duty" provider(s) as to the worsening condition of Laurel Hunter (continued nausea and vomiting

despite treatment). She was also, by virtue of her medical training, obligated to properly monitor and examine and treat Laurel Hunter. She failed and refused to do so, despite her awareness that Laurel Hunter's condition was in fact worsening, demonstrates deliberate indifference to Laurel Hunter's health and safety.

35. Laurel Hunter's physical injuries and death were a foreseeable and direct result of the Defendants' failure and refusal to provide her with appropriate medical monitoring and care.

## PRAYER FOR RELIEF

WHEREFORE, the Estate of Laurel Hunter prays for the following relief:

1. Judgment with the exact amount to be established at the time of trial jointly and severally against all Defendants for compensatory damages;

2. Judgment against each of the Defendants for punitive damages with the exact amount to be established at trial;

3. Attorney's fees, litigation expenses, cost, pre- and post-judgment interest as provided by law; and

4. Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 17th day of October, 2018.

WEIDNER & ASSOCIATES, APC
Counsel for Plaintiffs

By: /s/ Lisa Rosano
    Phillip Paul Weidner
    Lisa Rosano